**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Joseph A. Osefchen, Esquire (JO-5472)**
**5 Greentree Centre**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KASHER LAW GROUP, LLC, on behalf of itself and all others similarly situated, | Civil Case No: 1:18-cv-01821-NLH-AMD |
| Plaintiff, | |
| v. | |
| CIOX HEALTH, LLC | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO REMAND FOR LACK OF FEDERAL JURISDICTION

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES...............................................................ii-iii

Introduction.................................................................................1

Summary of Argument.....................................................................7

I.   DEFENDANT HAS NOT MET ITS BURDEN OF PROVING BY
     A PREPONDERANCE OF THE EVIDENCE THAT THE LIKELY
     AMOUNT-IN-CONTROVERSY EXCEEDS $5 MILLION.........................9

     A. Because the Jurisdictional Facts Have Been Challenged by Plaintiff
        and Are in Dispute, Defendant Bears the Burden of Proving By a
        Preponderance of the Evidence that the Amount-In-Controversy
        Exceeds $5 Million.................................................................10

II.  UNDER THE WELL-PLEADED COMPLAINT RULE, PLAINTIFF
     HAS THE RIGHT TO LIMIT THE AMOUNT OF THE RELIEF
     SOUGHT TO AVOID FEDERAL SUBJECT MATTER JURISDICTION........18

Conclusion...................................................................................20

i

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

Bailey v. J.B. Hunt Transp., Inc., No. 06-240, 2007 U.S. Dist.
LEXIS 16941, at *11 (E.D. Pa. Mar. 8, 2007)……………………………………………....18

Beegal v. Park W. Gallery, No. 05-5625 (RBK), 2006 U.S. Dist.
LEXIS 65513, at *5 (D.N.J. Sep. 14, 2006)……………………………………………………9

Bernetich, Hatzell & Pascu, LLC v. Med. Records Online, Inc.,
445 N.J. Super. 173, 181 n.3 (App. Div. 2016)……………………………………………1, 15

Boldt v. Correspondence Mgmt., 320 N.J. Super. 74, 78-81 (App.Div.1999)………..1, 15

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)……………19

Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)……………………………………18

Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007)……………………………10

Holmes Grp., Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 831 (2002)…………18

Judon v. Travelers Prop. Cas. Co. of Am.,
773 F.3d 495, 500 (3d Cir. 2014)……………………………………………10, 11, 12, 13, 14, 17

McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)…………………11

Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006)…………………………………10, 19

Myers v. BJ's Wholesale Club, Inc., No. 13-05504,
2014 U.S. Dist. LEXIS 66003, at *4-5 (E.D. Pa. May 14, 2014)…………………………18

Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)……………19

Scott v. Sysco Food Serv. of Metro N.Y., L.L.C., Civ. A. 07-3656 (SRC),
2007 U.S. Dist. LEXIS 79519, at *6 (D.N.J. Oct. 26, 2007)……………………………18

Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc.,
809 F.2d 1006, 1010 (3d Cir. 1987)…………………………………………………………9

<u>Truglio v. Planet Fitness, Inc.</u>, Civil Action No. 15-7959 (FLW)(LHG),
2016 U.S. Dist. LEXIS 98585, at *30 (D.N.J. July 28, 2016)...........................9, 11

## STATUTES

**Page(s)**

28 U.S.C. § 1332(d)(2)..............................................................................10

28 U.S.C. § 1332(d)(6)..............................................................................10

28 U.S.C. §
1447(c)............................................................................................20

CAFA.........................................................................7, 8, 9, 10, 19, 20

New Jersey Consumer Fraud Act, <u>N.J.S.A</u>. § 56:8-2.........................................7

New Jersey Declaratory Judgment Act, <u>N.J.S.A</u>. § 2A:16-51, <u>et</u> <u>seq</u>.........................7

<u>N.J.A.C</u>. § 8:43G-15.3...........................................................................1, 15

<u>N.J.A.C</u>. § 8:43G-15.3(d).......................................................1, 2, 3, 6, 7, 15, 16

<u>N.J.A.C</u>. § 8:43G-15.3(d)(5)(iv)..............................................................1, 5

<u>N.J.A.C</u>. § 13:35-6.5............................................................................1, 15

<u>N.J.A.C</u>. § 13:35-6.5(c)(4).....................................................................1, 15

## Introduction

This is a proposed class action, brought on behalf of a class composed of patients who are New Jersey citizens and/or their attorneys, who paid fees to Ciox Health, LLC ("Ciox") for electronic copies of New Jersey hospital records on CD which far exceeded the maximum legal limit allowed by N.J.A.C. § 8:43G-15.3(d). N.J.A.C. § 8:43G-15.3(d) limits the fees that may be charged to patients for copies of hospital records produced by New Jersey hospitals,[1] stating that **"If a patient or the patient's legally authorized representative requests, in writing, a copy of his or her medical record, a legible, written copy of the record shall be furnished at a fee based on actual costs."** (emphasis added). This limitation on the fees that may be charged for copies of New Jersey hospital records applies to both the patients themselves and their attorneys.[2] See N.J.A.C. § 8:43G-15.3(d)(5)(iv), which defines **"legally authorized representative"** to include, inter alia, a "Patient's attorney." These fee limits apply to both the hospitals that

---

[1] N.J.A.C. § 8:43G-15.3(d) is found in the regulations setting forth New Jersey hospital licensing standards and applies only to patient records held by a hospital. Records held by a doctor's office or other health care professional operating outside of a hospital are not covered by N.J.A.C. § 8:43G-15.3(d) and instead are covered by a separate regulation: N.J.A.C. § 13:35-6.5(c)(4). See e.g. Bernetich, Hatzell & Pascu, LLC v. Med. Records Online, Inc., 445 N.J. Super. 173, 181 n.3 (App. Div. 2016) (noting that the Board of Medical Examiners has promulgated separate regulations governing the right to, and charges for, patient records held by doctor's offices); Boldt v. Correspondence Mgmt., 320 N.J. Super. 74, 78-81 (App.Div.1999) (distinguishing between N.J.A.C. § 8:43G-15.3, covering records held by a hospital and N.J.A.C. § 13:35-6.5), covering doctor held records). Thus, this case applies to patient records produced by a New Jersey hospital only.

[2] The price limits in this regulation do not apply to requests for medical record copies by defense attorneys, insurance companies, defense experts, or anyone other than a patient or their designated representative. Accordingly, only patients who are New Jersey citizens and their attorneys are members of the proposed class.

hold the records and the record management and copy companies – such as Ciox – which contract with hospitals to respond to requests for copies of patient hospital records.  See Attachment A to the Complaint, Opinion Letter by N.J. Dept. of Health dated July 11, 2012, stating: **"The Department would apply the requirements of N.J.A.C. 8:43G-15.3 to a vendor acting as the agent of a hospital in the provision of medical records to patients."**

Put simply, N.J.A.C. § 8:43G-15.3(d) forbids a New Jersey hospital, or its records provider, from making a profit on the sale of copies of patient hospital records to the patient or the patient's designated recipient.[3] The case at bar deals with copies of New Jersey hospital records sold by Ciox to patients or their legal representatives in electronic format, such as on a compact disc ("CD") or via internet download. With regard to instances where copies of patient hospital records are sent to patients or their legal representatives on CD, the New Jersey Department of Health has issued a memorandum opinion stating that the term **"fee based on actual costs"** in N.J.A.C. § 8:43G-15.3(d) means that a provider of such a CD may charge a fee consisting of only three elements: a $10 "search fee," the actual cost of a blank CD, and the actual cost of mailing the CD to the purchaser.  See Attachment B to the Complaint, Memorandum Opinion by N.J. Dept. of Health dated September 2015, stating:

> **"the Department is interpreting N.J.A.C. 8:43G-15.3(d) and (e) to permit the following fees 'based on actual costs' to be charged for a medical records request that involves an EMR:**

---

[3] There is no limit imposed on what the copy provider may charge to other requestors who are not patients or their representatives, such as defense counsel, insurance companies, etc.

- **a search fee of no more than $10.00;**

- **the actual cost of the portable media used to copy the electronic records (e.g., CD, film, flash drive); and**

- **the actual cost of postage."** (emphasis added)

As outlined in greater detail in the Complaint, it is alleged that Ciox engages in a series of related uniform policies under which Ciox unlawfully earns a profit when it produces New Jersey hospital records to patients and patients' designated recipients in electronic format, such as on a CD or via internet download. Specifically, when Ciox responds to a request that electronically stored hospital records be sent to a patient or the patient's designated recipient, Ciox employs several related uniform policies which result in the patient or the patient's designated recipient being charged fees for copies of those electronically stored hospital records that greatly exceed the actual costs and legal limits on such fees imposed by N.J.A.C. § 8:43G-15.3(d).

The first of these related uniform policies is that, when Ciox provides copies of New Jersey hospital records to a patient or the patient's designated representative on CD or through internet download, it is Ciox's uniform policy to send a Ciox invoice to the patient or the patient's designated recipient which demands a fee for that electronic production that is not based on the actual cost to Ciox; i.e., the actual cost of transferring the electronically stored records to the CD or to a website for download, or the actual cost of the blank CD and/or the postage paid to mail the CD. Instead, the CIOX invoice demands that the patient or the patient's designated recipient pay a fee for such electronic production that is much higher than the actual cost thereof to Ciox. Ciox charges this

3

excessive fee pursuant to a standardized formula created by Ciox that is based in part on what the "per page" cost might have been if the same electronically stored records had instead been provided in paper format.

Yet Ciox's labor costs in transferring electronically stored hospital records from a computer database onto a CD or a website for download is much less than the cost of manually searching for and locating paper records, and then either printing out paper copies on a printer or manually copying such paper records on a copy machine. Indeed, a Ciox employee may transfer thousands of pages of electronically stored hospital records or images from a computer database onto a CD or a website for download in less than ten minutes. Thus, Ciox ignores the fact that it costs far less to copy electronically stored records onto a CD or a website download than it does to make and send paper copies of such records. Instead, Ciox's uniform policy is to charge recipients of hospital records on CD or via internet download a  "per page" fee, calculated according to a uniform formula created by Ciox, which results in a fee that is much higher than Ciox's actual costs of production (ie the maximum fee allowed by N.J.A.C. 8:43G-15.3(d)).

What happened to Plaintiff illustrates the unlawful policies of Ciox that are the subject of this litigation. Plaintiff is a personal injury law firm that routinely orders hospital records relating to its clients and potential clients from, inter alia, hospitals serviced by Ciox. On or about August 31, 2017, Plaintiff submitted a written request for hospital records created by Our Lady of Lourdes Hospital in Camden, New Jersey, relating to the treatment of one of its patients who is a New Jersey citizen – a patient who was and is a client of Plaintiff's – along with a written authorization from that client

4

authorizing the release of these hospital records directly to Plaintiff. The request for hospital records relating to Plaintiff's client was part of an investigation being conducted by Plaintiff on behalf of its client into whether a viable legal claim existed for a potential personal injury case. In making this request for the hospital records of its client, Plaintiff was acting as a "legally authorized representative" for that client,[4] who was a patient of Our Lady of Lourdes Hospital and a New Jersey citizen.

Pursuant to Ciox's contract with its client, Our Lady of Lourdes Hospital, Ciox responded to Plaintiff's request for hospital records on or about October 2, 2017, by sending a Ciox invoice addressed to Plaintiff for the production of the requested records. That Ciox invoice was directed to **"Kasher Law Group LLC"** for **"Records"** from **"Our Lady of Lourdes Hospital"** in "Camden, NJ." See Attachment C to the Complaint, Ciox Invoice to Plaintiff Kasher Law Group, LLC. Plaintiff was charged **"$161.90"** for the requested hospital records. Id. The Ciox invoice specifically itemized the following charges: a $10.00 **"Basic Fee"**; a charge of $100.00 for 100 pages of records, at a **"Per Page Copy (Paper) 2"** price of $1.00 per page; a charge of $40.25 for 161 pages of records, at a **"Per Page Copy (Paper) 1"** price of $.25 per page; and a fee of $11.65 for **"Shipping."** Id. No paper records were produced to Plaintiff. Instead, accompanying the Ciox invoice was a single CD containing 261 pages of hospital records in electronic format. See Attachment D to Complaint, Ciox Certification and copy of CD containing hospital records.

---

[4] See N.J.A.C. § 8:43G-15.3(d)(5)(iv), which defines **"legally authorized representative"** to include, inter alia, a **"Patient's attorney."**

On November 27, 2017, Plaintiff made an online payment of $161.90 to Ciox. See Attachment E to Complaint, Receipt for payment of **"$161.90"** by Plaintiff to Ciox on **"11/27/17."** Plaintiff has not been reimbursed for that $161.90 by anyone. The $161.90 was paid by Plaintiff directly to Ciox and was retained by Ciox. No portion of that fee went to Our Lady of Lourdes Hospital. The actual labor cost incurred by Ciox in transferring 261 pages of electronically stored hospital records onto the CD that Ciox sent to Plaintiff, the cost to Ciox of purchasing the blank CD, and the cost to Ciox of mailing that CD to Plaintiff, added together, was far less than $161.90. Indeed, the actual labor cost incurred by Ciox in transferring these electronically stored records onto the CD, the cost of the blank CD itself, and the cost of the postage to mail that CD to Plaintiff was, altogether, less than $20. Despite this, Ciox billed Plaintiff $161.90 for this CD production, calculating such fee based, not on its actual costs as required by N.J.A.C. § 8:43G-15.3(d), but on Ciox's uniform policies and standardized formula described herein.

What happened to Plaintiff was neither an isolated incident nor an accident. Rather, it was the result of Ciox's deliberate, knowing, and intentional policies, including Ciox's policy of charging fees for the electronic production of electronically stored New Jersey hospital records based on a standardized formula, which results in Ciox's charging of fees that exceed the actual cost incurred by Ciox of transferring such records from a computer data base to a website for download, or to a CD and then mailing that CD to patients and/or their representatives. These policies are in direct violation of the limits on such copy fees set forth in N.J.A.C. § 8:43G-15.3(d) because

they result in patients and their representatives having to pay far more for a copy of a CD

or to download electronic files containing such electronic records than the actual cost

incurred by the provider Ciox of transferring those records to that CD or website for

download.

Plaintiff brings New Jersey state law claims exclusively against Ciox, on behalf

of itself and the proposed class of New Jersey citizens, in order to remedy the unlawful

overcharges by Ciox, including:

  a. A claim for injunctive and declaratory relief under the New Jersey
     Declaratory Judgment Act, N.J.S.A. § 2A:16-51, et seq., to end
     Ciox's unlawful policies described herein;

  b. A claim under New Jersey common law for unjust enrichment
     and disgorgement based on the amounts collected by Ciox in
     excess of the lawful copy fee limits;

  c. A claim under the New Jersey Consumer Fraud Act ("CFA"), in
     that Ciox's uniform billing policy and billing formula as
     described herein constitute unconscionable commercial practices
     which violate N.J.S.A. § 56:8-2; and

  d. A claim under New Jersey common law for breach of contract for
     violation of the implied covenant of good faith and fair dealing.

**Summary of Argument**

The Defendant does not contend that federal subject matter jurisdiction exists over

Plaintiff's complaint, as all claims pleaded arise under New Jersey law. Instead,

Defendant's removal is based on CAFA. Where, as here, the Complaint itself makes clear

that the jurisdictional facts needed to support CAFA jurisdiction are lacking, the

removing party has the burden of proving facts with evidence that show this jurisdictional

requirement is met. In the case at bar, Defendant has not met this burden. Indeed, it is unclear whether Defendant can possibly meet this burden. In order to trigger CAFA, the amount in controversy must exceed $5 million. The Complaint itself expressly states that it seeks less than $5 million. See Complaint at Paragraph 3. Because of this allegation in the Complaint, the amount in controversy is disputed and Defendant must therefore prove by a preponderance of the evidence that the amount exceeds $5 million.

Defendant's removal petition does not come close to doing so. Indeed, the removal petition is noteworthy for its total lack of any evidence of the number of proposed class members or the amount in controversy. Defendant's removal petition makes unsupported assertions about numbers of class members and damages without explaining who is being counted as a proposed class member, how the asserted numbers were calculated, what records were consulted, what methodology was used, or providing any evidence at all to support such figures. Instead, the removal petition appears to rely on just the type of unsupported "wishful thinking" and "pie in the sky" estimates which have been held inadequate to meet the evidential burden that must be met by the removing party when, as here, the jurisdictional facts are challenged by the plaintiff.

Even without the express statement in the Complaint that the amount in controversy is less than $5 million, it seems fairly clear that the amount in controversy in this matter is far less than $5 million. As outlined in greater detail herein and in the Complaint, the alleged loss suffered by the named plaintiff in this matter – which the Third Circuit has held should be considered a "typical" amount of class member's loss – was no more than $131.90. The Complaint alleges that the number of proposed class

8

members is 2,000. Multiplying Plaintiff's $131.90 loss by 2,000 would lead to an estimated out of pocket recovery for the class of $263,800. Even after trebling that amount and adding in a healthy estimate for attorney's fees and costs, the likely amount in controversy in this matter would still be far less than $5 million.

Thus, Defendant has not proven by a preponderance of the evidence that the number of class members is 50,000 or that the total damages likely to be recovered by the class exceeds $5 million. For the reasons which are set forth in greater detail herein, this matter should be remanded to state court where it belongs.

## I.     DEFENDANT HAS NOT MET ITS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT THE LIKELY AMOUNT-IN-CONTROVERSY EXCEEDS $5 MILLION

Because federal courts are courts of limited jurisdiction, precedent makes clear that removal statutes are to be strictly construed against removal. See Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc., 809 F.2d 1006, 1010 (3d Cir. 1987) (**"It is settled that the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand."**). Recent opinions by district courts within the Third Circuit, including the District of New Jersey, continue to hold that this principal applies to removal under CAFA. See e.g. Truglio v. Planet Fitness, Inc., Civil Action No. 15-7959 (FLW)(LHG), 2016 U.S. Dist. LEXIS 98585, at *30 (D.N.J. July 28, 2016)(Judge Wolfson) (**"Any doubts must be resolved in favor of remand."**); Beegal v. Park W. Gallery, No. 05-5625 (RBK), 2006 U.S. Dist. LEXIS 65513, at *5 (D.N.J. Sep. 14, 2006) (**"Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal**

9

statute should be strictly construed and all doubts should be resolved in favor of remand.").

**A. Because the Jurisdictional Facts Have Been Challenged by Plaintiff and Are in Dispute, Defendant Bears the Burden of Proving By a Preponderance of the Evidence that the Amount-In-Controversy Exceeds $5 Million**

CAFA mandates that the **"claims of the individual class members shall be aggregated"** in order to determine if the **"matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."** 28 U.S.C. § 1332(d)(2), (d)(6). A party asserting federal jurisdiction in a removal case bears the burden of showing that the case is proper before the federal court. See Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014). See also Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (**"It is now settled in this Court that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."**); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006) (**"Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied."**).

In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates the factual allegations in the complaint and a defendant's notice of removal. Judon, 773 F.3d at 500; Frederico, 507 F.3d at 197. The proper test in a CAFA removal action depends on the nature of the jurisdictional facts alleged and whether they are in dispute. Judon, 773 F.3d at 500. At the removal stage of an action, a jurisdictional

fact in question may be "disputed" or "contested" in the pleadings and/or by a motion to remand. Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 502 (3d Cir. 2014) ("**In distilling these cases, we make clear that a jurisdictional challenge, which creates a dispute of fact, can be raised in the pleadings (such as the answer) or on a motion for remand.**") Thus, where the party resisting removal alleges that the amount in controversy needed to confer jurisdiction is lacking and/or challenges the removing party's contention that the amount is satisfied, there is a bona fide dispute over jurisdictional facts. Judon, 773 F.3d at 502. The party seeking removal then bears the burden of proving by a preponderance of the evidence that the amount in controversy requirement is satisfied. Judon, 773 F.3d at 502. See also Truglio v. Planet Fitness, Inc., Civil Action No. 15-7959 (FLW)(LHG), 2017 U.S. Dist. LEXIS 133105, at *6-7 (D.N.J. Aug. 21, 2017):

> **"When the sufficiency of the jurisdictional allegations in a notice of removal is challenged, the parties must submit proofs for the court to decide, by a preponderance of the evidence, whether the jurisdictional requirements are satisfied."**

See also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936):

> **"The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."**

Paragraph 3 of the Complaint specifically alleges that federal jurisdiction is lacking in this matter because **"all claims pleaded are New Jersey state law claims and**

**the total amount in controversy, including attorney's fees, is less than $5 million."** (emphasis added).  Where, as here, both the complaint and the motion to remand assert that the amount in controversy is less than that amount, the defendant – as removing party – bears the burden of proving the jurisdictional amount is satisfied by a preponderance of the evidence. See Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d at 506 (**"Because Travelers' notice of removal and accompanying memorandum are based on an inconclusive assumption that Judon challenged in her motion to remand, the District Court properly applied the preponderance of the evidence standard."**) See also Judon, 773 F.3d at 507 (**"we require Travelers, as 'the party alleging jurisdiction,' to justify its 'allegations by a preponderance of the evidence.'"**).

While the defendant may rely on estimates of class damages, such estimates must be grounded in provable fact and evidence, not unsupported assertions, wishful thinking, unproven conjecture, or self-serving assumptions. See Judon, 773 F.3d at 507-08, where the Third Circuit rejected an estimate by the removing party not grounded in fact proved by evidence, noting:

> **"Yet an assumption must be grounded on some reasonable inference that can be drawn from fact.** Travelers chose – wishfully – the amount of $20,000 per putative class member, providing the putative class with total compensatory damages of $4,000,000 (200 class members multiplied by $20,000) combined with punitive and treble damages. These assumptions plainly make reaching the $5,000,000 threshold much easier. **Missing from Travelers' conjecture is any 'proof to a reasonable probability' evidencing the damages suffered by individual class members… As a result, Travelers' conjecture is nothing more than an optimistic estimate of its potential liability – at least for jurisdictional purposes."** (emphasis added)

Moreover, the issue is not whether it is mathematically possible for the class damages to exceed $5 million, but rather what the reasonably likely recovery will be. See Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 507 (3d Cir. 2014):

> **"An estimate of the amount recoverable should be 'objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated. Id. This estimate should also not be based on the 'low end of an open-ended claim,' but rather on a 'reasonable reading of the value of the rights being litigated.'"** (emphasis added)

In proposed class actions, the Third Circuit held in Judon that the likely amount-in-controversy could be measured by the amount of the recovery sought by the named plaintiff,[5] multiplied by the number of proposed class members.  See Judon, 773 F.3d at 507:

> **"In a class action, the class representative's claim(s) must be typical of the claims of the class… It is, therefore, not unreasonable to assume that Judon, as the proposed class representative, has damages that are typical of the class."**

## B.  Defendant Has Not Met Its Burden of Proving By a Preponderance of the Evidence that the Amount-in-Controversy Exceeds $5 Million

Defendant has not met its burden of proving by a preponderance of the evidence that the likely amount-in-controversy in this matter exceeds $5 million. Defendant's removal petition sets forth unsupported numbers for class size and then claims that the amount in controversy exceeds $5 million. The removal petition, however, lacks evidence

---

[5] In the case at bar, the Complaint alleges that Plaintiff was charged $161.90 by Defendant and that, at most, Defendant was legally entitled to charge Plaintiff $30 (i.e. $20 for labor, cost of materials and postage, plus an additional $10 "search" fee which the New Jersey Department of Health has authorized). See Complaint at Paragraphs 76, 40, 46 and 20. Thus, the maximum out of pocket loss suffered by Plaintiff under the facts alleged in the Complaint is $131.90.

to prove the accuracy of those figures, or even a coherent explanation for the methodology used to arrive at those figures, including what, if any, records Defendant based these numbers on.

For example, Defendant's removal petition asserts, without evidence or explanation, that the number of proposed class members is 50,000. The Complaint, in contrast, alleges as a factual matter that the number of proposed class members is 2,000 persons. See Complaint at Paragraph 53: **"the class consists of at least two thousand persons."** Thus, there is a factual dispute as to number of proposed class members under Judon. This factual dispute, by itself, is enough to trigger Defendant's duty to prove its contention of a class of 50,000 by a preponderance of the evidence. See Judon, 773 F.3d at 506.

So far, Defendant has failed to do anything that could possibly meet that burden of proof.  No evidence is attached to the removal petition which purports to verify the accuracy of the 50,000 class member figure (or any other figure contained therein). Nor is there any explanation for how Defendant arrived at this 50,000 figure (i.e. who exactly is Defendant counting as a proposed class member and what, if any, records support such a figure).

Summarizing the class definition, the Complaint specifies that, to be in the proposed class, the patient at issue must be a New Jersey citizen (or their attorney) who, inter alia, received and paid a **"Ciox invoice,"** for hospital records produced on CD or via

14

internet download, where the records were held by a New Jersey hospital.[6] Because the

Complaint is based on alleged violations of N.J.A.C. § 8:43G-15.3(d), the proposed class

must be limited to **"patients"** and **"the patient's legally authorized representative..."**

Any other person or organization who requested copies of hospital records, such as

defense attorneys, insurance companies, experts for defense counsel, etc., are not within

the proposed class definition and are not covered by the fee limits set forth in N.J.A.C. §

8:43G-15.3(d). Therefore, they cannot be counted as potential class members.

Nor would the proposed class include persons, even New Jersey patients or their

attorneys, who ordered copies of medical records not produced by a New Jersey hospital.

This is so because the fee limits set forth in N.J.A.C. § 8:43G-15.3(d) apply only to

records held by a New Jersey hospital (such as Lady of Lourdes in the case at bar).  Copy

costs for medical records produced by a hospital outside New Jersey, or by a New Jersey

entity other than a New Jersey hospital, such as by a doctor's office or other health care

provider operating outside a hospital, are not covered by the fee limits set forth in

N.J.A.C. § 8:43G-15.3(d). Instead they are governed by their own separate regulation:

N.J.A.C. § 13:35-6.5(c)(4) (which is not at issue in the case at bar). Thus, persons who

ordered copies of medical records which were not held by a New Jersey hospital must be

---

[6] N.J.A.C. § 8:43G-15.3(d) is found in the hospital licensing standards and applies only to patient records held by a hospital. Records held by a doctor's office or other health care professional operating outside of a hospital are not covered by N.J.A.C. § 8:43G-15.3(d) and instead are covered by a separate regulation: N.J.A.C. § 13:35-6.5(c)(4). See e.g. Bernetich, Hatzell & Pascu, LLC v. Med. Records Online, Inc., 445 N.J. Super. 173, 181 n.3 (App. Div. 2016) (noting that the Board of Medical Examiners has promulgated separate regulations governing the right to, and charges for, patient records held by doctor's offices); Boldt v. Correspondence Mgmt., 320 N.J. Super. 74, 78-81 (App.Div.1999) (distinguishing between N.J.A.C. § 8:43G-15.3, covering records held by a hospital and N.J.A.C. § 13:35-6.5, covering doctor held records).

excluded from class membership.

Defendant's removal petition does not specify how it reached its 50,000 class member "estimate." That petition does not state whether Defendant weeded out:

- Those instances where the patients were not New Jersey citizens;

- Those persons who did not receive a "Ciox invoice" and instead received an invoice bearing the name of one of Ciox's predecessor organizations;

- Those who purchased records produced in paper form as opposed to records produced on CD or through internet download;

- Those who ordered copies of records which were held by a person or entity other than a New Jersey hospital, such as a doctor's office, an out of state hospital or any other health care professional operating outside a New Jersey hospital (whose records would be outside the scope of the N.J.A.C. § 8:43G-15.3(d) price limits); and

- Those persons who were not a patient or the patient's designated representative, such as defense counsel, insurance companies, defense experts, who are outside the class definition and the scope of N.J.A.C. § 8:43G-15.3(d) and thus cannot be counted as class members.

Neither Plaintiff nor the Court has any idea who Defendant's removal petition is counting as a proposed class member. Nor does Plaintiff or the Court know what records, if any, were consulted by Defendant to reach the 50,000 figure, or what criteria Defendant applied to calculate the number 50,000. Those facts are currently known only to Defendant.

The facts which are currently known to Plaintiff certainly make it unlikely that, applying the criteria set forth in the Complaint, 50,000 persons actually exist who fit within the proposed class definition and who are covered by the fee protections of N.J.A.C. § 8:43G-15.3(d). Ciox, after all, only came into existence in March of 2016.

16

Thus, only a New Jersey patient (or their attorney) who received an invoice after that date would meet the requirement that class members must have received and paid a **"Ciox invoice."**[7] It seems extraordinary that in less than 2 years, 50,000 Ciox invoices for copies of New Jersey hospital records were received and paid by New Jersey citizen patients or their attorneys. When one adds in the additional qualifying factor that the hospital records in question must have also been produced on CD and not in paper form, the 50,000 figure asserted in Defendant's removal petition becomes even more improbable.

In any event, it is clear there are disputes between the jurisdictional facts alleged in the Complaint and the assertions made in the removal petition. This includes the number of persons who actually fit within the proposed class definition and the actual amount in controversy. Under <u>Judon</u> and other case authority, Defendant bears the burden of proving with actual evidence – not simply guess work or self-serving "pie in the sky" estimates – that the likely amount in controversy in this matter actually exceeds $5 million.  Defendant's removal petition, which is totally lacking in any evidence of class size or amount in controversy, has clearly not come close to meeting that burden.

---

[7] Thus, persons who received and paid invoices bearing the name of one of Ciox's predecessor organizations, such as "HealthPort Incorporated," would therefore not be within the proposed class.

II.     **UNDER THE WELL-PLEADED COMPLAINT RULE, PLAINTIFF HAS THE RIGHT TO LIMIT THE AMOUNT OF THE RELIEF SOUGHT TO AVOID FEDERAL SUBJECT MATTER JURISDICTION**

It is black letter law that Plaintiff – not Defendants – determines what claims are being pursued in the Complaint and what type of relief is being sought in the Complaint. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (noting that under the well pleaded complaint rule, the plaintiff is master of his or her complaint); Holmes Grp., Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 831 (2002) (**"since the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law, . . . to have the cause heard in state court.'"**); Scott v. Sysco Food Serv. of Metro N.Y., L.L.C., Civ. A. 07-3656 (SRC), 2007 U.S. Dist. LEXIS 79519, at *6 (D.N.J. Oct. 26, 2007) (**"The rule makes the plaintiff the 'master of the claim,' meaning that he or she may avoid federal jurisdiction by forgoing federal causes of action and basing the claim on only state law."**).

The well-pleaded complaint rule applies, not merely as to the legal claims pleaded, but also to the dollar amount being sought in the complaint. See Myers v. BJ's Wholesale Club, Inc., No. 13-05504, 2014 U.S. Dist. LEXIS 66003, at *4-5 (E.D. Pa. May 14, 2014) (**"a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court.' Because plaintiffs are the masters of their complaint, they may expressly limit the claim below the jurisdictional requirement."**); Bailey v. J.B. Hunt Transp., Inc., No. 06-240, 2007 U.S. Dist. LEXIS 16941, at *11 (E.D. Pa. Mar. 8, 2007) (**"As a matter of pleading, it is clear that 'plaintiffs may limit their claims to avoid federal subject matter jurisdiction,'**

by suing for less than the jurisdictional amount"). See also Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.")

Even after CAFA, the Third Circuit has recognized that a plaintiff in a proposed class action may limit the amount sought to avoid federal jurisdiction under CAFA. See Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006):

> "The Supreme Court has long held that plaintiffs may limit their claims to avoid federal subject matter jurisdiction. 'If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.' CAFA does not change the proposition that the plaintiff is the master of her own claim." (emphasis added) (citations omitted)

See also Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005):

> "a removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold. Thus part of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands. That's the point of statements in our decisions that the removing litigant must show a reasonable probability that the stakes exceed the minimum." (emphasis added)

The Complaint in the case at bar states that Plaintiff is seeking less than $5 million, inclusive of attorney's fees. See Complaint at Paragraph 3 ("all claims pleaded are New Jersey state law claims and the total amount in controversy, including

**attorney's fees, is less than $5 million."**) To the extent that Defendant seeks to usurp Plaintiff's right to be master of its own complaint and its right to limit the dollar amount sought in the complaint, such an argument violates the well-pleaded complaint rule.

## Conclusion

For the foregoing reasons, Defendant has not proven by a preponderance of the evidence that the amount in controversy in this matter exceeds the $5 million needed to trigger CAFA jurisdiction. As such, the matter should be remanded to New Jersey state court.[8]

Respectfully Submitted,

Dated:  February 15, 2017          **DeNITTIS OSEFCHEN PRINCE, P.C.**

By:   /s/ Joseph A. Osefchen
          Joseph A. Osefchen (JO-5472)
          josefchen@denittislaw.com
          Stephen P. DeNittis (SD-0016)
          sdenittis@denittislaw.com
          Shane T. Prince (SP-0947)
          sprince@denittislaw.com
          525 Route 73 North, Suite 410
          Marlton, NJ 08053
          Telephone: 856-797-9951
          Fax: 856-797-9978

---

[8] Plaintiff declines to seek any award of attorney's fees or costs for this remand motion under 28 U.S.C. § 1447(c).